NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**PATRICIA WATKINS,**
*Petitioner*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent*

_____

2019-2195

_____

Petition for review of a decision of the Bureau of Justice Assistance in PSOB Claim No. 2014-002.

_____

Decided:  April 10, 2020

_____

PATRICIA WATKINS, Jackson, MS, pro se.

LAUREN MOORE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by JOSEPH H. HUNT, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

_____

Before PROST, *Chief Judge,* MAYER and TARANTO, *Circuit Judges.*

PER CURIAM.

Patricia Watkins ("Watkins") appeals the final determination of the Director of the Bureau of Justice Assistance ("BJA") denying her claim seeking a death benefit pursuant to the Public Safety Officers' Benefits Act of 1976 ("PSOBA"), Pub. L. No. 94-430, 90 Stat. 1346 (codified as amended at 34 U.S.C. §§ 10281–88).  We affirm.

## I. BACKGROUND

In August 2013, Leo Watkins ("Officer Watkins") was employed both by the Hinds Community College Police Department and the City of Raymond, Mississippi Police Department ("Raymond Police Department").  A. 2.  On August 2, 2013, he "fell unconscious while on a lunch break from performing traffic and crowd control at graduation ceremonies for Hinds Community College."  A. 1.  Although Officer Watkins was rushed to the hospital, he never regained consciousness and died on August 19, 2013.  A. 3.  His death certificate lists his cause of death as "cardiopulmonary failure due to brain hemorrhage due to hypertension."  A. 7.

Watkins, who is Officer Watkins' sister, subsequently filed a claim seeking a death benefit pursuant to the PSOBA.*  After the Public Safety Officers' Benefits Office denied her claim, A. 22–24, Watkins requested a hearing officer determination pursuant to 28 C.F.R. § 32.17.  Watkins was permitted to submit evidence in support of her claim when she appeared before the hearing officer.  A. 25.  The hearing officer determined that although Officer Watkins "was a long-term, dedicated police officer," there was insufficient evidence to establish that his death was the

---

\*    The BJA determined that Officer Watkins was not married and had no children at the time of his death.  A. 4–5.

direct and proximate result of an injury sustained in the line of duty.  A. 34.

Watkins then appealed to the BJA.  She presented evidence that Officer Watkins had responded to a domestic disturbance call when he was on duty with the Raymond Police Department on March 6, 2013.  A. 7.  As Officer Watkins was attempting to make an arrest, the suspect pushed him "against a wall . . . causing his head to hit the wall with sufficient force to break the drywall."  A. 7 (footnote omitted).  Watkins supplied photographs showing that Officer Watkins sustained bruises on his head as a result of this incident and testified that he had complained of headaches for several months after the incident occurred.  A. 7.

On April 11, 2019, the BJA denied Watkins' claim.  A. 1–17.  It explained that a claimant seeking a PSOBA death benefit "must demonstrate that it is more likely than not that the decedent was a public safety officer, who died as the direct and proximate result of an injury sustained in the line of duty."  A. 4 (footnotes, citation and internal quotation marks omitted).  Although the BJA agreed with the hearing officer that Officer Watkins was a public safety officer, A. 5, it concluded that there was no "competent medical evidence" showing that Officer Watkins' fatal stroke was the direct and proximate result of the head injury he sustained in March 2013.  A. 8.  The BJA determined, moreover, that Watkins was not entitled to rely on 34 U.S.C. § 10281(k), which creates a rebuttable presumption that a stroke suffered by a public safety officer while engaged in "nonroutine stressful or strenuous physical law enforcement . . . activity" qualifies as a personal injury "sustained in the line of duty" for PSOBA purposes.  *See* A. 9–11.  The BJA concluded that Officer Watkins' duties in the period immediately prior to his stroke did not involve nonroutine or strenuous physical law enforcement activity.  A. 11–12. According to the BJA, "in the 24-hour period preceding the onset of his fatal stroke, Officer Watkins conducted routine patrol activities and did not engage in any

activity that would constitute nonroutine stressful or strenuous physical law enforcement activity within the meaning of the [PSOBA] and its implementing regulations." A. 11.

Watkins then filed a timely appeal with this court. We have jurisdiction pursuant to 34 U.S.C. § 10287.

## II. DISCUSSION

This court's authority to review a decision by the BJA to deny a claim for a PSOBA death benefit is limited. "We review the BJA's application of its own regulations to determine '(1) whether there has been substantial compliance with statutory requirements and provisions of implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the government officials involved; and (3) whether substantial evidence supports the decision denying the claim.'" *Li v. Dep't of Justice*, 947 F.3d 804, 807 (Fed. Cir. 2020) (quoting *Amber-Messick v. United States*, 483 F.3d 1316, 1321 (Fed. Cir. 2007)).

The PSOBA provides a one-time cash payment to the survivors of public safety officers who are killed as the result of injuries sustained in the line of duty. 34 U.S.C. § 10281(a); *see Amber-Messick*, 483 F.3d at 1318. For a survivor to qualify for this benefit, at least three requirements must be satisfied. First, the public safety officer must have suffered a "personal injury" within the meaning of the PSOBA. 34 U.S.C. § 10281(a). Second, the personal injury must have been suffered "in the line of duty," and, finally, the officer's death must have been the "direct and proximate result" of that injury. *Id.*; *see Cassella v. United States*, 469 F.3d 1376, 1378 (Fed. Cir. 2006).

On appeal, Watkins argues that her brother died as a result of the blow to the head he sustained in March 2013 while making an arrest. *See* Pet. Corrected Informal Br. 1–2; *see also* Pet. Mem. in Lieu of Reply Br. 1–5. Substantial evidence, however, supports the BJA's determination

that Officer Watkins' August 2013 death was not the "direct and proximate result," 34 U.S.C. § 10281(a), of the head trauma he suffered in March 2013. *See, e.g.*, *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619–20 (1966) ("[S]ubstantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (citation and internal quotation marks omitted)); *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1366 (Fed. Cir. 2016) ("Substantial evidence review asks whether a reasonable fact finder could have arrived at the agency's decision and requires examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision." (citation and internal quotation marks omitted)).

In concluding that the head injury Officer Watkins sustained in March 2013 was not the direct and proximate cause of his death, the BJA relied on the opinion of Stephen J. Cina, M.D., an independent forensic pathologist, who concluded that "[t]he injuries received [by Officer Watkins] in March 2013 did not contribute to [his] death." A. 7. Cina stated that there was "no evidence that [Officer Watkins] injured his brain or bled into the membranes around his brain when he received blunt force injuries to his head in March of 2013" and that it was "[m]ore likely than not [that] the superficial blunt force injuries received in March 2013 [were] completely unrelated to his stroke in August 2013." A. 7–8; *see also* A. 38–39. Cina explained that Officer Watkins suffered from "longstanding, poorly controlled hypertension," and concluded that his stroke "was part of a natural disease process, namely high blood pressure." A. 39.

Significantly, moreover, the medical records associated with Officer Watkins' hospitalization in the period prior to his death contain no indication that his death was caused by his March 2013 head injury. A. 8. As the BJA correctly noted, "[h]ospital treatment records from . . . Officer Watkins' attending physician . . . make no mention of a head

injury" and the causes of death listed on his treatment discharge summary do not include traumatic head injury.  A. 8 (footnote omitted).  Under such circumstances, the BJA had ample support for its conclusion that Watkins failed to establish that it was more likely than not that her brother's August 2013 death was directly and proximately caused by the head injury he sustained in March 2013.  A. 8–9; *see* 28 C.F.R. § 32.5(a) ("Except as otherwise may be expressly provided in the [PSOBA] or this part, a claimant has the burden of persuasion as to all material issues of fact, and by the standard of proof of 'more likely than not.'").

On appeal, Watkins argues that the BJA "failed to consider the facts about [Officer Watkins'] blunt force trauma head injury . . . that was sustained while answering a domestic disturbance call on March 6, 2013."  Pet. Mem. in Lieu of Reply Br. 4.  We disagree.  The BJA carefully considered the record evidence showing that Officer Watkins had suffered a blow to the head while making an arrest in March 2013 and concluded that this head injury was "sustained in the line of duty."  A. 7.  As the BJA correctly determined, however, Watkins did not present "competent medical evidence" showing that her brother's August 2013 fatal stroke was "directly and proximately caused" by the head injury he sustained in March 2013.  A. 8.

Watkins also points to an autopsy report prepared by Matthias Okoye, M.D., and asserts that it establishes that the cause of Officer Watkins' death was the head injury he sustained in March 2013.  Pet. Corrected Inf. Br. 2.  Because Okoye's autopsy report was not presented to the BJA, however, it is "not part of the record on appeal and [is] not properly before us."  *Turman–Kent v. Merit Sys. Prot. Bd.*, 657 F.3d 1280, 1283 (Fed. Cir. 2011); *see, e.g.*, *Oshiver v. OPM*, 896 F.2d 540, 542 (Fed. Cir. 1990) ("We will not consider the new evidence contained in the supplemental papers because that evidence was not presented to the Board.").  We note, moreover, that Okoye conducted his

autopsy in October 2019, more than six years after Officer Watkins' death.

## III. CONCLUSION

We have considered Watkins' remaining arguments but do not find them persuasive. Accordingly, the final determination of the Director of the Bureau of Justice Assistance is affirmed.

## AFFIRMED

### COSTS

No costs.